# No. 22-2704
# United States Court of Appeals for the Seventh Circuit

——— I ———

**WILLIAM FEEHAN,**
*Plaintiff-Appellee,*

v.

**TONY EVERS,**
In his official capacity as Wisconsin's Governor
*Defendant-Appellant*

——— I ———

Appeal from the United States District Court
Eastern District of Wisconsin
No. 2:20-cv-01771
The Honorable Chief Judge Pamela Pepper

**Opening Brief of Appellee William Feehan**

Sidney Powell
Sidney Powell P.C.
2911 Turtle Creek Blvd, Ste 300
Dallas, TX 75219
Ph: 214-707-1775
Email: sidney@federalappeals.com
*Counsel for Appellee and Counsel*

# CORPORATE DISCLOSURE STATEMENT

No corporation is a party to this appeal. A separate disclosure statement has been filed with the Clerk. For the Court's ease of reference:

Defendant Evers is Governor of Wisconsin, sued solely in his official capacity. He was represented in the district court by:

Davida Brook
Susman Godfrey LLP
1901 Ave of the Stars - Ste 950
Los Angeles, CA 90061
310-789-3100
Fax: 310-789-3150
Email: dbrook@susmangodfrey.com

Justin A Nelson
Susman Godfrey LLP
1000 Louisiana St - Ste 5100
Houston, TX 77002-5096
713-653-7895
Fax: 713-654-6666
Email: jnelson@susmangodfrey.com

Paul M Smith
Campaign Legal Center
1101 14th St NW - Ste 400
Washington, DC 20005
202-856-7901
Fax: 202-736-2222
Email: psmith@campaignlegal.org

Rachel E Snyder
Stafford Rosenbaum LLP

222 W Washington Ave - Ste 900
PO Box 1784
Madison, WI 53701-1784
608-259-2657
Fax: 608-259-2600
Email: rsnyder@staffordlaw.com

Richard Manthe
Stafford Rosenbaum LLP
222 W Washington Ave - Ste 900
PO Box 1784
Madison, WI 53701-1784
608-259-2684
Email: rmanthe@staffordlaw.com

Stephen Morrissey
Susman Godfrey LLP
1201 3rd Ave - Ste 3800
Seattle, WA 98101
206-373-7380
Email: smorrissey@susmangodfrey.com

Stephen Shackelford , Jr
Susman Godfrey LLP
1301 Ave of the Americans -32nd Fl
New York, NY 10019
212-729-2012
Email: sshackelford@susmangodfrey.com

His counsel on appeal are:

Jonathan L. Williams
Marina Eisner
States United Democracy Center
1101 17th Street, NW, Suite 250
Washington, DC 20036
(202) 999-9305

Jeffrey A. Mandell
Rachel E. Snyder
Richard A. Manthe
Stafford Rosenbaum LLP
222 W. Washington Ave., Suite 900
Madison, WI 53701
(608) 256-0226

Plaintiff Feehan was an elector for President Trump.

Trial Counsel for Feehan have an interest in the outcome of the

appeal because Appellant seeks sanctions against them:

Daniel J Eastman
Eastman Law
PO Box 158
Mequon, WI 53092
414-881-9383
Email: daneastman@me.com

Michael D Dean
Michael D Dean LLC
17035 W Wisconsin Ave - Ste 100
PO Box 2545
Brookfield, WI 53008
262-798-8044
Fax: 262-798-8045
Email: miked@michaelddeanllc.com

Sidney Powell
Sidney Powell PC
2911 Turtle Creek Blvd - Ste 300
Dallas, TX 75219
214-707-1775
Email: sidney@federalappeals.com

Brandon Johnson, Esq.
2911 Turtle Creek Blvd - Ste 300
Dallas, TX 75219

Emily P Newman
717 King Street Ste 300
Alexandria, VA 22314

Howard Kleinhendler
Howard Kleinhendler Esq
369 Lexington Ave - 12th Fl
New York, NY 10017
917-793-1188
Fax: 732-901-0832
Email: howard@kleinhendler.com

Julia Z Haller
The Law Offices of Julia Haller
601 Pennsylvania Avenue,
N.W., S. Building, Suite 900
Washington, DC 20004
(202) 729-2201
Email: HallerJulia@outlook.com

L Lin Wood
L Lin Wood PC
PO Box 52584
Atlanta, GA 30305-0584
404-891-1402

/s/ Sidney Powell
Sidney Powell
Sidney Powell, P.C.
2911 Turtle Creek Blvd, Ste 300
Dallas, TX 75219
Ph: 214-707-1775
Email: sidney@federalappeals.com
*Counsel for Appellee Feehan and his counsel*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT……………………………….i

STATEMENT REGARDING ORAL ARGUMENT…………………………1

STATEMENT OF JURISDICTION…………………………..…………….2

STATEMENT OF ISSUES…………………………………..…………….2

STATEMENT OF THE CASE…………………………………………….3

SUMMARY OF THE ARGUMENT……………………..……………….8

ARGUMENTS AND AUTHORITIES……………..…………..………….10

 

I.     The Standard of Review is Abuse of Discretion
Regarding Sanctions. Jurisdiction is Reviewed *de novo*………..10

II.    *Overnite* Mandates Rejection of Evers' Belated Effort
to Obtain Sanctions.  There was no longer
a case and controversy…………………………………………....11

     a. *Overnite* is Dispositive……………………………..………..11

     b. *Overnite* Still Controls……………………………..………..13

     c. Sanctions and Jurisdiction to Wield Them Must
be Strictly Construed. …………………………….…………..15

     d. Appellant's Cases are Distinguishable
and Not Controlling…………………………………………..16

III.   The District Court Already Decided It Would Not Impose
Section 1927 Sanctions…………………………………………19

     a. The First Amendment Right to Petition Protects
Feehan's Suit. …………………………………..……………..22

b.  What's Sauce for the Goose is Sauce for the Gander…………………………………………………24

c.  Election Litigation Has its Own Importance and Special Considerations, and Policy Dictates Against Imposing Sanctions. …………………………….……………27

IV.  Inherent Authority Sanctions Cannot be Imposed on this Record…………………………………...29

a.  The Erroneous Quote Is Not Grounds for Inherent Authority Sanctions……………………..…………30

b.  People Who Live in Glass Houses Should Not Throw Stones………………………………….....31

c.  *King v. Whitmer* is Distinguishable……..…….……………34

d.  Other Cases and Policy Demand Rejection of Sanctions……36

CONCLUSION……….……………………………………………40

CERTIFICATE OF COMPLIANCE……..……………………………42

# TABLE OF AUTHORITIES

## Cases

*Bell v. Vacuforce, LLC*, 908 F.3d 1075 (7th Cir. 2018) ……………..…………20

*Bush v. Gore*, 531 U.S. 98 (2000)………………………………….………3, 8, 23

*California Motor Transport Co. v. Trucking Unlimited*,
    404 U.S. 508 (1972)……………………………………………….……..23

*Carson v. Simon*, 978 F.3d 1051 (8th Cir. 2020) …………..……………….22

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)……………………………….29

*Christiansburg Garment Co. v. EEOC*,
    434 U.S. 412 (1978) ……………………………………………………38

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990) ………………………………………...……14, 17, 18

*Costantino v. Detroit*, 950 N.W.2d 707 (Mich. 2020) …………………..……38

*Corley v. Rosewood Care Center, Inc. of Peoria*,
    388 F.3d 990 (7th Cir. 2004) ……………………………………………18

*Curling v. Raffensperger*, 397 F. Supp. 3d 1334 (N.D. Ga. 2019)…………38

*Fed. Trade Comm'n v. Credit Bureau Ctr.*, LLC,
    937 F.3d 764 (7th Cir. 2019) ……………………………………………19

*Goldstein v. Cox*, 396 U.S. 471 (1970) ……………………………………....15

*Goodyear Tire & Rubber Co. v. Haeger*,
    137 S. Ct. 1178 (2017) …………………………………………....29 31

*Griffin v. Roupas*, 385 F.3d 1128 (7th Cir. 2004) …………….…………....39

*Grochocinski v. Mayer Brown Rowe & Maw*, LLP,
    719 F.3d 785 (7th Cir. 2013) ...................................................30

*Hicks v. S. Md. Health Sys. Agency*,
    805 F.2d 1165 (4th Cir. 1986) .............................…...............16, 18

*Hyde v. Irish*, 962 F.3d 1306 (11th Cir. 2020) .....................................16

*In re Ruben*, 825 F.2d 977 (6th Cir. 1987) ...............................…..16, 18, 20

*In re Schaefer Salt Recovery, Inc.*,
    542 F.3d 90 (3d Cir. 2008) .....................................................20

*In Re William Feehan* (No. 20-859) .....................................................5

*Kiefel v. Las Vegas Hacienda, Inc.*,
    404 F.2d 1163 (1968) ........................................................20, 34

*King v. Whitmer,* 556 F.Supp.3d 680 (E.D. Mich. 2021) …...…....6, 34, 35

*Laborers' Pension Fund v. Blackmore Sewer Const.*,
    298 F.3d 600 (7th Cir. 2002) .....................................................6

*Lightspeed Media Corp. v. Smith*,
    761 F.3d 699 (7th Cir. 2014) ....................................…..............13

*Lightspeed Media Corporation v. Smith*,
    830 F.3d 500 (7th Cir. 2016) ............................…..................13, 14

*Macort v. Prem, Inc.*, 208 F. App'x 781 (11th Cir. 2006) ......................20

*Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90 (3d Cir. 1988) .........16, 18

*Matos v. Richard A. Nellis, Inc.*,
    101 F.3d 1192 (7th Cir. 1996) ...............................…...............17

*Matter of Yagman*, 796 F.2d 1165 (9th Cir. 1986) .............................20

*Milwaukee Police Ass'n v. Bd. Of Fire & Police*
 *Comm'rs of Milwaukee*, 708 F.3d 921 (7th Cir. 2013) …………..…..22

*Moss v. Bush*,
 828 N.E. 2d 994 (Ohio 2005) ….….……………..……10, 25, 26, 27, 28

*NAACP v. Button*, 371 U.S. 415 (1963) …………..……………………….23

*Overnite Transp. Co. v. Chi. Indus. Tire Co.*, 697 F.2d 789
 (7th Cir. 1983)……………..…..1, 2, 7, 9, 11, 12, 13, 16, 19, 30, 40, 41

*Page v. Oath Inc.*, No. 69,2021,
 2022 WL 162965 (Del. Jan. 19, 2022) ..………..……………..…36

*Peacock v. Thomas*, 516 U.S. 349 (1996) ...….……..……………………15

*Pearson v. Kemp*, No. 1:20-cv-4809 (N.D. GA) ..…………..………….9, 39

*Presidents Conference v. Noerr Motor Freight, Inc.*,
 365 U.S. 127 (1961) …………….……………………………..……23

*Professional Real Estate Investors, Inc., v.*
 *Columbia Pictures Industries, Inc.*, 508 U.S. 49 (1993)……………23

*Quality Molding Co. v. American Nat. Fire Ins. Co.*,
 287 F.2d 313 (1961) ……………………………………………..…34

*Republican Party of Penn. v. Degraffenreid*,
 141 S. Ct. 732 (2021) …………….………….……..………………38

*Roadway Exp., Inc. v. Piper*, 447 U.S. 752 (1980) ………………….15, 29

*Royce v. Michael R. Needle P.C.*,
 950 F.3d 939 (7th Cir. 2020) ……….……………………….………20

*Shamrock Oil & Gas Corp. v. Sheets*,
 313 U.S. 100 (1941) ………….…………………………….….……15

*Shannon v. Shannon*, 965 F.2d 542 (7th Cir. 1992) ............................10

*Smith v. Psychiatric Sols., Inc.*,
    864 F. Supp. 2d 1241 (N.D. Fla. 2012) ......................................20

*Stein v. Wisconsin Elections Comm'n*, Case No. 16CV3060
    (Dane Co. Cir. Court, Nov. 18, 2016) ......................................26

*Teigen v. Wisconsin Elections Comm'n*,
    976 N.W.2d 519 (Wisc. 2022) ...............................................39

*Trump v. The Wisconsin Elections Comm'n, et al.*,
    Case No. 20-cv-1785-BHL (E.D. Wis.) ......................................13

*United States v. Alvarez*, 567 U.S. 709 (2012) .................................22

*United States v. Ross*, 535 F.2d 346 (6th Cir. 1976) .........................15

*Willy v. Coastal Corporation*,
    503. U.S. 131 (1992) ......................................................17

*White v. New Hampshire Department of Employment Security*,
    455 U.S. 455 (1982) ................................................14, 16, 19

*Wos v. United States*, 288 F. App'x 297 (7th Cir. 2008)......................10

## Statutes, Rules and Constitutional Provisions

28 U.S.C. § 1291.................................................................2

28 U.S.C. § 1343.................................................................2

28 U.S.C. § 1367.................................................................2

28 U.S.C. §1927............1, 3, 5, 7, 10, 11, 12, 13, 14, 16, 17, 18, 19, 20, 40

28 U.S.C. § 2201.................................................................2

28 U.S.C. § 2202.................................................................2

Federal Rule of Appellate Procedure 4............................................2

Federal Rule of Civil Procedure 11.........................…....5, 14, 17, 18, 35

Federal Rule of Civil Procedure 41............................................15

Federal Rule of Civil Procedure 54............................................19

U.S. Const. art. II., § 1, cls. 2-3............................................3

## Online PDF Links to Court Filings

Amicus Brief of Rep. Conyers at 2, No. 04-2088, *Moss v. Bush*, 828
N.E.2d 994 (Ohio, filed Feb. 14, 2005), available at
https://tinyurl.com/mwkde7uj). ..........................................26, 27, 37

Complaint in *Stein v. Wisconsin Elections Comm'n*, Case No. 16CV3060
(Dane Co. Cir. Court, Nov. 18, 2016) available at
https://tinyurl.com/...................................….........................5, 26

*Dominion Voting Systems, Inc., et. al., v. Wisconsin Elections Comm'n,
et. al.*, Appeal No. 2019AP272 (WI Court of Appeals, Dist. IV, Apr. 30,

2020) available at
https://tinyurl.com/ynwy94mn.………….……........................................26

Hearing Transcript, *Jill Stein v. Wisconsin Elections Comm'n*, Case No.
3:16-cv-00795-jdp (Dane Co. Cir. Court, Nov. 29, 2016) available at
https://tinyurl.com/395b8wpd/.………….…….............................5, 26

Jill Stein's Motion to Intervene, *Great America PAC et. al. v. Wisconsin
Elections Comm'n*, Case No. 3:16-cv-00795-jdp, (W.D. WI, Dec. 2, 2016)
available at
https://tinyurl.com/3mptsmej………….……...........................................26

Motion for Leave to Join Amicus Brief of Rep. Conyers by Senator
Russell Feingold et al.,
available at https://tinyurl.com/yyrxc8n5 ..............................................26

Order Denying Mandamus in *In Re William Feehan* (No. 20-859)
available at https://tinyurl.com/nwyrfdcy...................................................5

Petition in *In Re William Feehan* (No. 20-859) is available at
https://tinyurl.com/36fa7dyc........................................................................4

Verified Complaint, *Moss v. Bush*, No. 04-2088, 828 N.E.2d 994, 997
(Ohio 2005), available at https://tinyurl.com/2vb6e8mn...................24, 25

## Other

Adam Liptak, *Error and Fraud at Issue as Absentee Voting Rises*, N.Y.
TIMES (Oct 6, 2012)………………………………………………………38

Christina Wilkie, *Trump Lawyer John Eastman referred for prosecution
by Jan. 6 committee*, CNBC (Dec. 19, 2022, 3:01 PM), available at
https://tinyurl.com/yc68dy6k.....................................................................32

Daniel Marans, *What Jill Stein's Recount Effort Actually Accomplished*,
(Dec. 13, 2016, 6:49 PM) available at https://tinyurl.com/3ydcashm.......5

John C. Fortier & Norman J. Ornstein, "Symposium: The Absentee Ballot and the Secret Ballot: Challenges for Election Reform," 36 *U. Mich. J.L. & Reform* 483 (2003)………………………………………………………………….39

Lachlan Markey and Jonathan Swan, *Scoop: High-powered group targets Trump lawyers' livelihoods*, March 7, 2022 available at https://tinyurl.com/duf8wnfh.…………………………………………..........7

Michael Moss, "Absentee Votes Worry Officials as Nov. 2 Nears," *New York Times* (late ed.), Sept. 13, 2004, p. A1……………………………….39

Nicole Etcheson, *Bleeding Kansas: Contested Liberty in the Civil War Era* 1-2 & n. (2004) ………………………………………………………28

Oral argument in *King v. Whitmer* (6th Cir, Dec. 8, 2022) at https://tinyurl.com/ya9hfy7m………………………………………………35

Paul Sacca, *Top Dem operative and founder of Media Matters accused of illegally profiting from far-left nonprofit*, April 25, 2020, available at https://tinyurl.com/y26djv94………………………………………………6

The 65 Project, "Ethics Complaints," available at https://the65project.com/ethics-complaints/…………………………………7

The 65 Project, "Ethics Complaint Against John Eastman," (July 28, 2022) available at  https://tinyurl.com/yzfwwwy4……………………………34

The 65 Project (@The65Project), Twitter (Mar. 7, 2022, 6:51 AM) https://twitter.com/The65Project/status/1500801311306133512…………7

The 65 Project (@The65Project), Twitter (Aug. 31, 2022, 4:52 PM) https://twitter.com/The65Project/status/1565080230947160065…………7

William T. McCauley, "Florida Absentee Voter Fraud: Fashioning an Appropriate Judicial Remedy," 54 *U. Miami L.Rev.* 625, 631–32 (2000)………………………………...39

Wisconsin Office of Special Counsel, *Office of Special Counsel Second Interim Investigative Report On the Apparatus & Procedures of the Wisconsin Elections System*, March 1, 2022, available at https://tinyurl.com/3nn889fk..................................................................40

## STATEMENT REGARDING ORAL ARGUMENT

Appellees agree with Appellant that this is not a case "in which the decisional process would be significantly aided by oral argument." *Feehan* at Dkt. 14 at ii.  The district court was bound by this Court's decision in *Overnite*, and it also wrote—as was within its discretion—that it would not impose sanctions.[1]  *See Overnite Transp. Co. v. Chi. Indus. Tire Co.*, 697 F.2d 789 (7th Cir. 1983).

Appellees are a presidential elector and his counsel who exercised their First Amendment right to petition the government by raising federal constitutional issues following unprecedented irregularities in the 2020 presidential election.  Democrats have previously filed cases asserting the same kinds of problems—including computerized voting fraud as recently as 2016—but their lawyers were not besieged with such lawfare as has been waged against counsel herein.  Plaintiff's case was resolved in the district court in eight days.  Oral argument is not needed to affirm the district court's thorough analysis under controlling precedent.

---

[1] Specifically, the district court wrote twice in its opinion that "if the court had jurisdiction, it would not impose sanctions under §1927." S*ee, Feehan* at Dkt. 113 at 24, 29; App. at 24, 29. It left open the possible need for a hearing were the court to address one issue under its inherent authority.

## STATEMENT OF JURISDICTION

Appellant's statement of jurisdiction is correct. Plaintiff Feehan properly invoked the jurisdiction of the district court under 28 U.S.C. §§ 1331, 1343, 1367, 2201, and 2202. *Feehan* at Dkt. 9 at 7-8. This is an appeal of the district court's denial of sanctions for lack of jurisdiction and sanctionable conduct by order entered on August 24, 2022. *Id.* at Dkt. 113.[2] Appellant Evers filed a timely notice of appeal on September 23, 2022, *Id.* at Dkt. 116, and this Court held it has jurisdiction over this appeal under 28 U.S.C. §1291 and Federal Rule of Appellate Procedure 4(a)(1)(A). *See Feehan* (CTA 7) Dkt. 8.

## STATEMENT OF ISSUES

I. Whether this Court's decision in *Overnite* required the district court to reject a belated sanctions motion filed long after the district court entered this Court's mandate of dismissal because there was no longer a case and controversy over which the court had jurisdiction?

---

[2] Non-party Appellees represented in this brief are Mr. Feehan's counsel: Sidney Powell, Howard Kleinhendler, Julia Haller, Brandon Johnson, Daniel J. Eastman, and Michael Dean.

II.  Whether the district court properly exercised its discretion to deny sanctions, including its analysis under §1927 and the court's inherent authority?

## STATEMENT OF THE CASE

Mr. Feehan is a voter registered in Wisconsin and was a presidential elector for then-President Trump.  *Feehan* at Dkt. 72-1 (Declaration of William Feehan).  On December 1, 2020, Feehan filed this case raising federal constitutional issues challenging the 2020 presidential election in Wisconsin and to obtain inspection of the voting machines.  *Id.* at Dkt. 1.  Two days later, on December 3, 2020, Plaintiff amended his complaint.  *Id.* at Dkt. 9.  The operative complaint alleged four counts.  *Id.* at 37-46.  Count One alleged liability for the Governor and others, under 42 U.S.C. §1983, for engaging in an on-going violation of the Elections and Electors Clauses of the Constitution, U.S. Const. art. II., § 1, cls. 2-3.  *Id.* at 37-39.  Counts Two through Four made further allegations that Wisconsin was violating the equal protection and due process rights of its citizens by failing to enforce its own state election laws, citing *Bush v. Gore*, 531 U.S. 98 (2000).

The amended complaint was fifty pages with 302 pages of exhibits and expert reports—far more than required to initiate any federal case. *Feehan* at Dkt. 9. There was no hearing, no discovery, and no oral argument. The court did not hear a single witness. *Id.* at Dkt. 115.[3]

On December 9, 2020, eight days from first filing, the district court granted defendants' motion to dismiss on procedural grounds, denied the plaintiff's motion for injunctive relief as moot, and dismissed the case. *Id.* at Dkt. 83. It entered judgment on December 10, 2020. *Id.* at Dkt. 85.

Plaintiff Feehan immediately appealed. *Id.* at Dkt. Nos. 84, 90. He also filed an emergency petition for writ of mandamus to the United States Supreme Court on December 15, 2021.[4]

Joseph Biden was inaugurated as President on January 20, 2021. On February 1, 2021, with Feehan's concurrence, *Feehan* (CTA 7), Case No. 20-3448, Dkt. 15, this Court dismissed the case as moot with a

---

[3] Governor Evers' statement of the case often cites to his own allegations that were never tested in a hearing or adjudicated. *Feehan* (CTA 7) at Dkt. 14 at 3-8.

[4] A copy of the petition in *In Re William Feehan* (No. 20-859) is available at https://tinyurl.com/36fa7dyc.

mandate to vacate the district court's earlier decision as moot. *Id.* at Dkt. 95. The Supreme Court denied certiorari on March 1, 2021.[5]

One hundred and twelve (112) days after the Court's Order of Dismissal on December 9, 2020, and two months after this Circuit dismissed the appeal and issued its mandate, Mr. Evers filed a motion seeking sanctions pursuant to 28 U.S.C. §1927 and the district court's inherent authority. *Id.* at Dkt. 97.[6] The Attorney General of Wisconsin did not seek sanctions against opposing counsel. *Id.* at Dkt. Nos. 97-104.[7] Governor Evers is represented by private counsel. *Id.* at Dkt. 97.

---

[5] Copy of the Supreme Court's March 1, 2021, Order Denying Mandamus in *In Re William Feehan* (No. 20-859) available at https://tinyurl.com/nwyrfdcy.

[6] Evers did not seek sanctions under Rule 11, Fed. R. Civ. P. The case did not even remain in the district court long enough for Evers to comply with Rule 11's 21-day safe harbor period. Fed. R. Civ. P. 11(c)(2).

[7] Perhaps Attorney General Josh Kaul refused to seek sanctions against counsel for Feehan because he, while head of Perkins Coie's Madison, Wisconsin office in 2016, represented Hillary Clinton intervening in support of Jill Stein following the 2016 election. Ms. Stein sued the Wisconsin Elections Commission seeking a recount of all ballots cast in Wisconsin. *See* Complaint in *Stein v. Wisconsin Elections Comm'n*, Case. No. 16CV3060 (Dane Co. Cir. Court, Nov. 18, 2016) available at https://tinyurl.com/395b8wpd She made arguments substantially similar to those of Mr. Feehan. *Id.* Even though she obtained only one percent of the vote, she obtained an evidentiary hearing. *See* Hearing Transcript, *Jill Stein v. Wisconsin Elections Comm'n*, Case No. 3:16-cv-00795-jdp (Dane Co. Cir. Court, Nov. 29, 2016) available at https://tinyurl.com/395b8wpd; and Wisconsin granted a recount. *See* Daniel Marans, *What Jill Stein's Recount Effort Actually Accomplished*, (Dec. 13, 2016) available at https://tinyurl.com/3ydcashm. Apparently, no sanctions

Throughout the 2020 election and especially in its aftermath, Democrats and progressives conducted an unprecedented, organized, funded, and relentless effort to target multiple sanctions motions, lawsuits, and bar grievances against those attorneys who dared challenge the election's integrity.[8]    David Brock,[9] Michigan attorney David Fink,[10] and others formed a 501(c)(3) non-profit— "The 65 Project"—with the express goal of trying to disbar and destroy the lives

---

were sought against Ms. Stein or her counsel.  Likewise, no project was formed to disbar her lawyers or those for the Clinton campaign.  Instead, Mrs. Clinton's Wisconsin counsel was elected Attorney General of Wisconsin.

[8] This Court may take judicial notice of matters within the public domain. *See, Laborers' Pension Fund v. Blackmore Sewer Const.*, 298 F.3d 600, 607 (7th Cir. 2002) ("We may take judicial notice of matters of public record.").

[9]  Brock is the proudly partisan founder of Media Matters, who abruptly resigned from that organization only weeks ago when it was disclosed he is under investigation for diverting $2.7 Million from a tax-exempt organization to his own for-profit political media and consulting business, True Blue Media.  *See* Paul Sacca, *Top Dem operative and founder of Media Matters accused of illegally profiting from far-left nonprofit*, April 25, 2020, available at https://tinyurl.com/y26djv94.

[10] Mr. Fink represented the City of Detroit which intervened to seek sanctions and obtained the order by Judge Parker in *King v. Whitmer*, 556 F.Supp.3d 680 (E.D. Mich. 2021).  Mr. Fink also briefed and argued the appeal in the Sixth Circuit in *King*. https://tinyurl.com/ya9hfy7m. He and his 65 Project filed multiple grievances against all counsel. *See, King*; *see also*, fn. 12, *infra*, regarding "The 65 Project."

of more than 100 lawyers who challenged the integrity of the 2020 election.[11] In an interview with Axios, The 65 Project founder and advisor David Brock described the initiative as a way to "not only bring the grievances in the bar complaints, but shame them [the lawyers] and make them toxic in their communities and in their firms." *Id.* Counsel herein were among the first targeted.[12]

On August 24, 2022, the district court denied Evers' motion because, under this Circuit's precedent in *Overnite Transp. Co.*, 697 F.2d at 793-794, the district court lacked jurisdiction over defendant's motion filed long after the case was closed. *Feehan* at Dkt. 113. Significantly, she also wrote that sanctions should not be imposed under §1927. *Id.* at 24, 29; App. at 24, 29.

> In an abundance of caution, the court notes that if it did have jurisdiction to rule on the motion, it would not have awarded fees under 28 U.S.C. §1927. The court would be hard-pressed to

---

[11] Lachlan Markey and Jonathan Swan, *Scoop: High-powered group targets Trump lawyers' livelihoods*, March 7, 2022, available at https://tinyurl.com/5aw9kcfa.

[12] *See* The 65 Project, "Ethics Complaints," available at https://the65project.com/ethics-complaints/. *See also* The 65 Project (@The65Project), Twitter (Mar. 7, 2022, 6:51 AM) https://twitter.com/The65Project/status/1500801311306133512; *see also*, The 65 Project (@The65Project), Twitter (Aug. 31, 2022, 4:52 PM) https://twitter.com/The65Project/status/1565080230947160065.

find that the plaintiff unreasonably and vexatiously "multiplied" the litigation; other than the original complaint, the plaintiff filed only eight affirmative pleadings…the court has no basis on which to conclude that the plaintiff was "dilatory" or that he needlessly delayed proceedings; if anything (as the defendant also has argued), the plaintiff was pushing an extremely expedited schedule, which the court and the defendants struggled to accommodate.

*Id.* at 24. Evers appealed Chief Judge Pepper's order denying sanctions, *Feehan* (CTA 7) at Dkt. 3, and this Court held it has jurisdiction to consider this appeal. *Id.* at Dkt 8.

## SUMMARY OF THE ARGUMENT

This was not a typical civil suit brought by lawyers sparring over money. Rather, Mr. Feehan is plaintiff of a special sort. He is an elector—with a constitutional role—and a First Amendment right to petition the government through lawyers acting on his behalf in the highest traditions of the Bar—regardless of the popularity of that position. Mr. Feehan filed a detailed complaint in Wisconsin federal court raising federal questions, including the applicability of *Bush v. Gore*, after the flagrant unprecedented anomalies in the 2020 election. At bottom, Mr. Evers seeks to punish the very filing of the original lawsuit and to deter any lawyer from doing anything similar in the future

with which he and his party disagree.  This is unconstitutional and un-American.

Supporting the gravity of the allegations and their extensive investigation, counsel attached three hundred pages of affidavits and expert reports to the *Feehan* complaint—far beyond what is required for a federal filing. The case occupied the district court for a grand total of eight days.  A similar case filed in Georgia a few days earlier received a temporary restraining order to preserve the integrity of the voting machines.[13]

Evers sought sanctions long after the case was closed.  Nearly 17 months later (from 03-31-21 to 08-24-22), the district court ruled it was bound by *Overnite*, and it denied the motion because there was no longer a case and controversy when Evers sought sanctions. *Feehan* at Dkt. 113. The court proceeded to examine the sanctions issues "in an abundance of caution." *Id.* at Dkt. 113 at 24; App. at 24.  The district court made plain that, if it did have jurisdiction, she would not award sanctions to Mr.

---

[13] *See Pearson v. Kemp*, No. 1:20-cv-4809 (N.D. GA), Dkt. 14 (Order Granting TRO, entered 11-29-20). Under such a high standard as required for a temporary restraining order, this relief—essentially identical to that requested in Wisconsin—shows the case was not frivolous.

Evers under 28 U.S.C. §1927 for multiple reasons. *Supra* fn. 1. *See also, Moss v. Bush*, 828 N.E. 2d 994, 997 (Ohio 2005) ("An election contest ... is not a typical lawsuit.").[14] She also rejected his various arguments for sanctions under the court's inherent authority on all but one issue. The court believed that to rule on a misquote, which Evers alleged was "fabricated," the court would need a hearing to determine if counsel had made a deliberate misrepresentation. The district court's thorough order and detailed analysis should be affirmed without oral argument, and for additional reasons, no further hearing is required.

## ARGUMENTS AND AUTHORITIES

### I. The Standard of Review is Abuse of Discretion Regarding Sanctions. Jurisdiction is Reviewed *de novo.*

A court always has jurisdiction to determine its jurisdiction. *Shannon v. Shannon*, 965 F.2d 542, 545 (7th Cir. 1992) ("A primordial element of our jurisprudence is that federal courts have jurisdiction to determine whether they have subject matter jurisdiction"), which is decided under the *de novo* standard of review. *Wos v. United States*, 288 F. App'x 297,

---

[14]     In *Moss*, the Ohio Supreme Court refused to sanction Democrats for litigation challenging the 2004 Presidential Election in Ohio for the same kind of alleged vote flipping and computer rigging of voting machines Mr. Feehan alleged here.

298 (7th Cir. 2008) ("The district court's conclusion that it lacks jurisdiction to address this question is reviewed de novo by this court"). A determination as to sanctions rests within the district court's discretion. *See Overnite Transp. Co.*, 697 F.2d at 794.

## II. *Overnite* Mandates Rejection of Evers' Belated Effort to Obtain Sanctions.   There Was No Longer a Case and Controversy.

### a. *Overnite* is Dispositive.

This Court's decision *Overnite Transp. Co. v. Chi. Indus. Tire Co.*, 697 F.2d 789 (7th Cir. 1983) is dispositive of this case, and it is difficult to add to the district court's already thorough and well-reasoned opinion on that point.  The district court correctly determined it lacked jurisdiction over a motion for sanctions under Section 1927 and its inherent authority that was filed long after the case was concluded.  In *Overnite*, this Circuit held that a party *may not* bring a motion for sanctions after an appeal has been dismissed.  This Court explained in *Overnite*:

> In the instant case no motion requesting attorney's fees was filed with either the district court or this court during the pendency of Overnite's original appeal on the merits. It was not until two months after this court affirmed the district court's dismissal of the plaintiff's action that the defendant filed its motion for fees and costs. Therefore, since the defendant failed to file a motion before any court requesting attorney's fees while the appeal on the merits was pending, and because the district court did not reserve

11

jurisdiction nor was jurisdiction expressly reserved by statute, we hold the defendant did not file its motion within a reasonable time and the district court was without jurisdiction to act on the motion. Therefore, the order granting the defendant's motion for attorney's fees is hereby set aside and vacated.

*Id.* at 793-794.

The law is clear and controlling in this Circuit, and the district court was correct in determining that in these circumstances, it did not have "jurisdiction to decide a sanctions motion after the appellate court has affirmed the district court's dismissing the case and issued its mandate." *Feehan* at Dkt. 113 at 19-20; App. at 19-20. This Court issued its mandate on February 23, 2021, vacating the district court's decision and remanding with directions to dismiss the case as moot. *Id.* at Dkt. 96.

The district court explained—just as in *Overnite*—it "did not reserve jurisdiction, no statute provided it with post-appeal jurisdiction and no party filed motions regarding the case during the two months the appeal was pending. The defendant did not file his motion for fees until March 31, 2021—over a month after this Circuit issued its mandate. Dkt. No, 97." *Feehan* at Dkt. 113 at 20; App. at 20. *Overnite* precludes an award of sanctions under Section 1927 and under the court's inherent

authority without a live case or controversy.  The district court had no jurisdiction.  *Id.* at 23; App. at 23.

### b. *Overnite* Still Controls.

As the district court pointed out in its order denying defendant's motion, "the Seventh Circuit has given no indication that it does not consider *Overnite* to be good law," *see Feehan* at Dkt. 113 at 23 (citing *Trump v. The Wisconsin Elections Commission, et al.*, Case No. 20-cv-1785-BHL (E.D. Wis.), Dkt. No. 178), where the same jurisdictional argument set forth by the defendant was rejected.  *Id.*

Furthermore, as the district court noted, this Court has cited *Overnite* in several decisions over the past forty years, including in *Badillo*, *Knorr Brake Corp.* and, most recently, *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 707 (7th Cir. 2014) (appellants were "correct that motions under section 1927 must not be unreasonably delayed," citing *Overnite*)."  *Feehan* at Dkt. 113 at 23; App. at 23.  *Overnite* was good law when the district court issued its Order Denying Defendant's Motion for Attorney Fees, and it is good law today.  *Id.*

Appellant's reliance on *Lightspeed Media* is misplaced.  In this Court's later case of the same name, *Lightspeed Media Corporation v.*

*Smith*, 830 F.3d 500, 505-08 (7th Cir. 2016), there was no question of jurisdiction, and new documents were found showing that counsel had flat out lied to the court and withdrawn money from accounts to try to avoid paying the sanctions ordered.  Counsel obstructed discovery, lied to the court, and violated court orders.  Clearly, discovery sanctions were warranted pursuant to Fed. R. Civ. P. 37(a) and 28 U.S.C. §1927.

Nor does *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) (interpreting *White v. New Hampshire Department of Employment Security*, 455 U.S. 455 (1982)) help Mr. Evers.  While *Cooter & Gell* supports jurisdiction to entertain a post-dismissal Rule 11 sanctions motion, the Supreme Court's reasoning in that case—which focused on "Rule 11's language and purposes"—has no application to the more restrictive and circumscribed standards for imposing sanctions under inherent authority or Section 1927.  496 U.S. at 394-95.  There was no Rule 11 motion here.  The case was only pending eight days.  *See* Fed. R. Civ. P. 11(c)(2) (safe harbor requirement).[15]

---

[15] The district court also rejected Mr. Evers' complaint that he did not have enough time to file a Rule 11 motion while the case was in litigation.  Moreover, his contention regarding lack of time to file a Rule 11 motion contradicts his argument for Section 1927 sanctions. *Feehan*, Dkt. 113 at 28-29, App. at 28-29.

### c. Sanctions and Jurisdiction to Wield Them Must be Strictly Construed.

Because the authority to impose sanctions is penal in nature, it must be strictly construed. *See*, e.*g.*, *United States v. Ross*, 535 F.2d 346, 350 (6th Cir. 1976). This is particularly true of inherent-authority sanctions, which are "shielded from direct democratic controls, [and] must be exercised with restraint and discretion." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980).

The rule is that jurisdiction to wield strictly construed powers must be construed narrowly. *See Goldstein v. Cox*, 396 U.S. 471, 477–478 (1970) (28 U.S.C. §1253 jurisdiction); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941) (removal jurisdiction). The effect of a court-granted motion to dismiss brought by a defendant is an "adjudication on the merits." Fed. R. Civ. P. 41(b). Thus, in the absence of a specific textual authority granting jurisdiction to entertain a motion for sanctions filed after a case is over, as happened here the moment the case was dismissed, the district court correctly determined it had no jurisdiction to decide it. *Peacock v. Thomas*, 516 U.S. 349, 355 (1996) ("[O]nce judgment was entered in the original ERISA suit, the ability to resolve simultaneously factually intertwined issues vanished.").

15

### d. Appellant's Cases are Distinguishable and Not Controlling.

In what is usually an argument for an en banc petition, Appellant cites a series of out of circuit cases to contend that a district court has the power to impose sanctions under Section 1927 and the court's inherent authority even when no Article III case or controversy exists. *See Feehan* (CTA 7) at Dkt. 14 at 15. Of course, those decisions are not binding here, and *Overnite* is controlling. *Id.*, citing *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020). The district court considered Appellant's argument regarding *White v. New Hampshire Dep't of Emp. Sec.*, 455 U.S. 445 (1982) and rejected it wholesale as inapposite to this case. *See* Dkt. 113 at 21-22; App. At 21-22. Moreover, there is no circuit split.[16]

---

[16] Contrary to Evers' contention, there is no true "circuit split." The cases from other circuits that Evers' cites are distinguishable. Two expressly distinguish *Overnite. See, e.g., Hicks v. S. Md. Health Sys. Agency*, 805 F.2d 1165, 1167 (4th Cir. 1986) (distinguishing *Overnite*); *See, e.g., In re Ruben*, 825 F.2d 977, 982 (6th Cir. 1987) (distinguishing *Overnite*); *See also, Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90, 100 (3d Cir. 1988) (In the Rule 11 context, the Third Circuit has adopted a "supervisory rule…that motions [] requesting sanctions be filed in district court before the entry of a final judgment.") The remaining cases cited are also distinguishable on their facts. *See Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999) (finding jurisdiction in long simmering dispute but reversing award of sanctions); *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1223 (10th Cir. 2006) (motion for attorneys' fees was filed within eight days).

Appellant's reliance on *Matos v. Richard A. Nellis, Inc.*, 101 F.3d 1192, 1196 (7th Cir. 1996) is also unavailing. There, the plaintiff was in continuing litigation to collect on a judgment of the court. *Id.* at 1195. This circuit held that the defendant created excess expenses by "obfuscation and dissimilation...Evasion of service, failure to obey court orders, production of forged documents, and obstinate refusal to pay a debt created by a judicial order." *Id*. at 1196. Accordingly, this Court vacated and remanded the district court's determination that a section 1927 sanctions motion was moot. *Id*. at 1196.

Aside from facts and context distinguishable on its face, *Mato*s cites *Cooter & Gell and Willy v. Coastal Corporation,* 503. U.S. 131 (1992). In *Willy*, the Court held that a court of appeals' later determination that a district court did not have jurisdiction does not truncate the district court's ability to impose Rule 11 sanctions for conduct before it. It, like *Cooter & Gell* discussed *supra*, is a Rule 11 case that had a motion pending when the matter was before the district court. They are

inapposite to this case—as are his out-of-circuit cases—also distinguishable because they implicated Rule 11.[17]

As discussed above, and as explained in the district court's opinion denying sanctions (Dkt. 113 at 13; App. at 13), *Cooter & Gell* includes a brief comment in a second opinion from Justice Stevens—concurring in part and dissenting in part—noting that a court may "impose sanctions under 28 U.S.C Section 1927 against lawyers who have multiplied court proceedings vexatiously." *Id. at* 412. However, the case does not analyze section 1927 sanctions.[18]

---

[17] *Feehan* (CTA 7) at Dkt. 14 at 16. *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 98 (3d Cir. 1988); *In re Ruben*, 825 F.2d 977, 981-82 (6th Cir. 1987); *Hicks v. S. Md. Health Sys. Agency*, 805 F.2d 1165, 1166-67 (4th Cir. 1986).

[18] This Circuit in *Corley v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990 (7th Cir. 2004) affirmed the district court's denial of sanctions under both Rule 11 and Section 1927. In its 20-page opinion, this Court explains the distinct standards for each type of sanctions. This demonstrates what has been clear from the start: Rule 11 sanctions and Section 1927 sanctions are different and serve different purposes. "Section 1927 is permissive, not mandatory. The court is not obliged to grant sanctions once it has found unreasonable and vexatious conduct. It may do so in its discretion." *Id*. at 1014. Section 1927 sanctions are subject to a "deferential standard of review." *Id*. Rule 11 cases—in or out of circuit—do not support Appellant's arguments.

The district court's determination that it lacked jurisdiction because there was no longer a case and controversy is correct and must be affirmed.[19]

### III. The District Court Already Decided It Would Not Impose Section 1927 Sanctions.

Mr. Evers virtually ignores the fact that the district court already reviewed his request for Section 1927 sanctions and would deny it. Even if this Court were to treat this case as an *en banc*, overturn *Overnite*,[20] and hold the district court had jurisdiction in these circumstances, the district court would not grant sanctions, and its decision would be affirmed under the abuse of discretion standard of review. *Feehan* at Dkt. 113. Appellant has not and cannot demonstrate an abuse of

---

[19] Moreover, Appellant's argument surrounding the post-*White* revision to Federal Rule 54 is a pure waste of time. The rule applies to routine motions for attorneys' fees in cases where the district court has jurisdiction and a basis to grant them—not to sanctions motions. *See* Fed. R. 54(d)(2)(E) ("Subparagraphs (A)–(D) do not apply to claims for fees and expenses as sanctions for violating these rules or as sanctions under 28 U.S.C. §1927."). Even if Rule 54 did apply, it does not create jurisdiction. Evers filed nothing within the time period of Rule 54. Further, the district court addressed and correctly rejected Appellant's arguments pertaining to *White* in its opinion. *See Feehan,* Dkt. 113 at 21-22; App. at 21-22.

[20] There is no intervening and controlling Supreme Court decision that would constitute a compelling reason to overturn this precedent. *See Fed. Trade Comm'n v. Credit Bureau Ctr.*, LLC, 937 F.3d 764, 776 (7th Cir. 2019).

discretion.  *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 958 (7th Cir. 2020)   ("Sanctions imposed   pursuant   to   § 1927 are reviewed for an abuse of discretion") (citing *Bell v. Vacuforce, LLC*, 908 F.3d 1075, 1081 (7th Cir. 2018)).

The district court's opinion is correct.  Section 1927 sanctions are available against only an "attorney or other person admitted to conduct cases," and only for the "excess costs, expenses, and attorneys' fees reasonably incurred" because the proceedings were "multipli[ed]" in an "unreasonabl[e] and vexatious[]" manner.  28 U.S.C. §1927.  Section 1927 requires a showing of "something less than subjective bad faith, but something more than negligence or incompetence."  *In re Ruben*, 825 F.2d at 987.  It does not apply to the filing of a lawsuit.  *See also Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163 (1968).[21]

---

[21]  This is widely accepted law. *See also In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101 (3d Cir. 2008) ("[T]he proceedings in a case cannot be multiplied until there is a case."); *Matter of Yagman*, 796 F.2d 1165, 1187 (9th Cir. 1986) ("Section 1927 does not apply to initial pleadings, since it addresses only the multiplication of proceedings. It is only possible to multiply or prolong proceedings after the complaint is filed."); *Smith v. Psychiatric Sols., Inc.*, 864 F. Supp. 2d 1241, 1269 (N.D. Fla. 2012), *aff'd*, 750 F.3d 1253 (11th Cir. 2014) ("[B]ased on its plain language, §1927 applies only to filings after the lawsuit has begun." (citing *Macort v. Prem, Inc.*, 208 F. App'x 781, 786 (11th Cir. 2006))).

Proceedings were neither vexatious, multiplied, nor delayed. As Chief Judge Pepper found, the "court has no basis on which to conclude that the plaintiff was 'dilatory' or that he needlessly delayed proceedings; if anything (as the defendant also has argued), the plaintiff was pushing an extremely expedited schedule, which the court and the defendants struggled to accommodate." *Feehan* at Dkt. 113 at 24; App at 24. The only issue that has delayed resolution and multiplied the proceedings unnecessarily has been Mr. Evers' efforts to obtain sanctions.

Appellant repeatedly labels Mr. Feehan's case as "frivolous" and "baseless"—that he is merely alleging "conspiracy theories" to undermine democracy. *Feehan*, Dkt. 4 at 20. *See also*, *Feehan* (CTA 7) at Dkt. 14. He purposely filed his motion for sanctions to chill similar suits by other attorneys. *Feehan* at Dkt. 98 at 8-9, 21-22; App. at 24. Yet to this day, no court has heard a single witness. Having had no evidentiary hearing, it is impossible to deem Feehan's factual allegations "frivolous."[22] Nor was the case frivolous in any other way.

---

[22]  Mr. Feehan requested an evidentiary hearing in the district court on the merits of his case and then again when the motion for sanctions was filed. *Feehan* at Dkt. Nos. 44, 109. No discovery was allowed, and no hearing was held. Not one of the allegations of hundreds of witnesses and experts was tested in the crucible of a trial or even in a preliminary injunction hearing. It

21

Mr. Feehan was not a mere voter; he was an elector with a constitutional role.[23]  His claim that his slate should have been selected was not even ripe until Governor Evers certified the electors for Biden. To file before then would have required seeking a declaratory judgment— relief much more difficult to obtain.[24]

### a. The First Amendment Right to Petition Protects Feehan's Suit.

Appellant's desire to punish the very filing of this litigation and to chill the willingness of any attorney in the future to take such a case opposed by the Democrat establishment is an assault on the long-standing role and duty of attorneys, the role of judges, and the importance of the First Amendment right of a citizen to petition his government for the redress of his grievances.  *See United States v. Alvarez*, 567 U.S. 709, 729 (2012) (judges, like other government actors,

---

would defy logic, reason, controlling precedent, and due process to deem his allegations baseless.

[23]  He had standing under *Carson v. Simon*, 978 F.3d 1051, 1057 (8th Cir. 2020) ("Electors have standing as candidates.").

[24] "An inquiry into ripeness involves considering 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'" *Milwaukee Police Ass'n v. Bd. Of Fire & Police Comm'rs of Milwaukee*, 708 F.3d 921, 933 (7th Cir. 2013).

22

are bound by the First Amendment; they may not punish speech simply because they believe it's untrue.).

Attorneys must be free to represent their clients with zeal. Under the Petition Clause of the First Amendment, a civil litigant cannot be sanctioned for bringing a non-baseless claim in court—unless the lawsuit is a mere "sham." *Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138 (1961); *Professional Real Estate Investors, Inc., v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 51 (1993). Justice Douglas in *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972) stated "the right of access to the courts is indeed but one aspect of the right of petition." *Id.* at 609. The First Amendment also protects "litigation . . . as a form of political expression." *NAACP v. Button*, 371 U.S. 415, 429 (1963).

Were it not for these protections, were filings in other cases scrutinized and lawyers sought to be punished as in this case, landmark cases like *Brown v. Board of Education, Baker v. Carr, Miranda v. Arizona, Obergefell v. Hodges, Heller v. District of Columbia, New York Times v. Sullivan, Nixon v. United States, Gideon v. Wainwright, Bush v. Gore,* and scores of cases like them would never have reached the

Supreme Court.  None of these cases were supported by then-existing precedent; in most, established law was directly contrary.  Lawyers stood up in these high-profile cases and advocated extremely controversial positions.  None were subjected to the scrutiny, targeting, and lawfare that has been heaped on counsel in the 2020 election cases by those who well know "the process is the punishment."  To our knowledge, no "non-profit" was formed to disbar civil rights lawyers or those who stood to defend the terrorists who killed thousands of Americans on 9-11.  And, in countless cases that courts see every day, lawyers and judges rely on affidavits, and lawyers make accidental misquotes or assertions that eventually are proved wrong. This is part of zealous advocacy—peaceful, orderly advocacy on behalf of clients who believe they have been wronged.

### b. What's Sauce for the Goose is Sauce for the Gander.

Nor is the relief Feehan requested unheard of or incapable of being addressed by a federal court if presented with the magnitude of fraud Mr. Feehan had evidence he could prove.  Indeed, on equivalent allegations of computer manipulation of the vote count, votes being flipped from Kerry to Bush, and a fraudulent re-tabulation of votes, Democrat litigants sought much of the same relief in Ohio in 2004.  *See* Verified

Petition in *Moss*, available at https://tinyurl.com/2s47rpcd.  Specifically

they alleged:

- George W. Bush, Dick Cheney, Karl Rove, Ken Blackwell and others "participated personally and/or substantially 'in devising and/or implementing [a] pattern of vote fraud and discrimination * * * which operated to deprive numerous Ohio citizens of their constitutional and statutory rights." *Id*. at 15.

- The legitimate result was changed to a fraudulent result by "gaining physical or electronic access to the tabulating machines and systems" such as by modem," *Id*. at 30.

- the "confederate of [the Republicans] who was actually changing the vote totals did not need access to the computer. Electronic access can be obtained from almost anywhere in the world. . ." *Id*. at 31.

- A second means of changing the result included "by inserting unauthorized and so far undetected operating instructions into the software" used in connection with voting machines," *Id*. and

- "some or all of the unauthorized operating instructions were pre-set to delete themselves a given amount of time after the election." *Id*.

- At least 130,613 votes were taken from Kerry-Edwards and given to Bush-Cheney.  *Id*. at 35.

The relief requested included that votes be added to Kerry-Edwards

and certification of the Kerry-Edwards electors.  *Id*. at 40-41.[25]  Jill Stein

made similar allegations in 2016, supported by the intervention of

---

[25] *See* Verified Petition in *Moss*, available at https://tinyurl.com/2s47rpcd.

Hillary Clinton. She obtained an evidentiary hearing,[26] recount, and apparently an order for Dominion Voting Systems' source code in Wisconsin.[27]

While Appellant seeks to punish the lawyers who filed this suit,[28] Democrats previously argued correctly: "For over two hundred years, one of the strengths of our democracy has been that citizens may question the results of an election."[29]

---

[26] *See* Complaint in *Stein v. Wisconsin Elections Comm'n*, Case. No. 16CV3060 (Dane Co. Cir. Court, Nov. 18, 2016) available https://tinyurl.com/395b8wpd; *See also* Jill Stein's Motion to Intervene, *Great America PAC et. al. v. Wisconsin Elections Comm'n*, Case No. 3:16-cv-00795-jdp, (W.D. WI, Dec. 2, 2016) available at https://tinyurl.com/3mptsmej; *see also* Hearing Transcript, *Jill Stein v. Wisconsin Elections Comm'n*, Case No. 3:16-cv-00795-jdp (Dane Co. Cir. Court, Nov. 29, 2016) available at https://tinyurl.com/395b8wpd; *see also Dominion Voting Systems, Inc., et. al., v. Wisconsin Elections Comm'n., et. al.*, Appeal No. 2019AP272 (WI Court of Appeals, Dist. IV, Apr. 30, 2020) available at https://tinyurl.com/ynwy94mn.

[27] *See Dominion Voting Systems, Inc., et. al., v. Wisconsin Elections Comm'n., et. al.*, Appeal No. 2019AP272 (WI Court of Appeals, Dist. IV, Apr. 30, 2020) available at https://tinyurl.com/ynwy94mn.

[28] *See Feehan* at Dkt. 98 at 8-9, 21-22 ("deterrence demands making an example of Plaintiff and his attorneys to discourage future frivolous litigation.") *Id.* at 21.

[29] *See* Amicus Brief of Rep. Conyers at 2, No. 04-2088, *Moss v. Bush*, 828 N.E.2d 994 (Ohio, filed Feb. 14, 2005), available at https://tinyurl.com/mwkde7uj). *See* Motion for Leave to Join Amicus Brief of Rep. Conyers by Senator Russell Feingold et al., *id.*, *available at* https://tinyurl.com/yyrxc8n5 (Amici included recent January 6th Committee Members Rep. Zoe Lofgren and Rep. Adam Schiff among many others).

Remarkably, it was Democrats who first suggested the "conspiracy theory" that third-party electronic tampering with ballots, secret computer code, and statistical anomalies justified a hearing to decide whether to reverse the assignment of Ohio's 2004 electoral college votes.[30] They vigorously opposed the imposition of sanctions in that case, and none were imposed.[31]  Similarly, no sanctions were sought or imposed against Jill Stein.

### c. Election Litigation Has its Own Importance and Special Considerations, and Policy Dictates Against Imposing Sanctions.

"An election contest ... is not a typical lawsuit."  *Moss v. Bush*, 828 N.E.2d 994, 997 (Ohio 2005).  Election cases must, regardless of the particular statutory scheme involved, be litigated in "a very short time after an election," and therefore "a prospective contester has limited time

---

[30] *See Moss* Complaint at ¶¶ 69-75, 86-87, *available at* https://tinyurl.com/2vb6e8mn.

[31] *See* Amicus Brief of Rep. Conyers at 2-3, No. 04-2088, *Moss v. Bush*, 828 N.E.2d 994 (Ohio, filed Feb. 14, 2005), available at https://tinyurl.com/mwkde7uj). (noting the importance of private litigation to contest elections, "protect the broader public interest," and "have the fact as to who has been duly elected by them judicially determined.". . . "The inquiry must be whether in a given instance the popular will has been, or is about to be, thwarted by mistake or fraud.") (internal citations omitted).

to investigate all the facts surrounding an election, particularly where, as here, the challenge is to a statewide election." *Id.* at 998.

Chief Justice Moyer's sage observations in *Moss* speak to two independent reasons for strictly limiting sanctions in election litigation. The first bears on the propriety of sanctions under conventional analysis, which requires taking account of the facts and circumstances (including the opportunity for investigation and deliberation) under which the attorney acted.

It is Chief Justice Moyer's second reason that speaks to the First Amendment. Elections have enormous consequences. It should hardly be surprising that citizens take them seriously—and always have. *See* Nicole Etcheson, *Bleeding Kansas: Contested Liberty in the Civil War Era* 1-2 & n. (2004) (describing the election-related violence that followed the failed promise of the Kansas-Nebraska Act). Our Framers gave us the First Amendment not merely to protect individual liberty but also to secure the legitimacy (and thereby the continuation) of our government and its institutions themselves. The Framers knew that without the First Amendment's pressure valves—the rights of individuals to assemble, to speak, and to petition for redress—our great experiment

would fail, because citizens who lack channels for peaceful expression of grievances will inevitably resort to less orderly ones.

## IV.   Inherent Authority Sanctions Cannot be Imposed on this Record.

A court can invoke its inherent authority to sanction only when no other mechanism "is up to the task" and when counsel's conduct is so appalling "the very temple of justice has been defiled." *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S.Ct. 2123 (1991)  (preserving courts inherent authority for "fraud" or when "the very temple of justice has been defiled" or when an attorney acts for an improper purpose (internal quotation marks omitted)).  The Supreme Court has now made clear that inherent-authority sanctions must be "compensatory rather than punitive in nature" and so are "limited to the fees the innocent party incurred solely because of the misconduct." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1182, 1186 (2017).

Inherent-authority sanctions are the most difficult to justify and must be carefully exercised.  They require a showing of bad faith.  S*ee Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766-67, 100 S.Ct. 2455 (1980). "The Federal courts have the inherent power to impose a wide range of sanctions upon parties for abusive litigation.  This inherent power,

29

however, is limited to 'cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders.'"  *Grochocinski v. Mayer Brown Rowe & Maw*, LLP, 719 F.3d 785, 799 (7th Cir. 2013) (citations omitted) (affirming a denial of sanctions).  There is no basis for such sanctions here.  Here, the rules were "up to the task" if there had been a real violation.

### a. The Erroneous Quote Is Not Grounds for Inherent Authority Sanctions.

The district court addressed and rejected each of Evers' purported bases for such sanctions except one:  a miscite/misquote.  Even were this Court to reverse *Overnite*, Evers' complaint about this error provides neither a basis for sanctions nor a reason to remand on this record.  While the district court noted that if it had jurisdiction, to consider sanctions for the erroneous quotation or miscite would require a hearing to decide if it were deliberate.  Importantly, nothing exists in the record even to *suggest* the erroneous quote is anything but an innocent mistake caused by multiple counsel exchanging drafts around the clock to file a response overnight to hundreds of pages of briefing.[32]

---

[32] The misquote occurred when a suggested argument by one counsel inadvertently appeared as part of a citation, and it was not caught in the

Evers seeks to recover every dime of his attorneys' fees—even if
only for the quotation error. Yet, in *Goodyear Tire & Rubber Co. v.
Haeger*, 137 S. Ct. 1178, 1186 (2017), the Supreme Court "made clear that
[an inherent authority] sanction, when imposed pursuant to civil
procedures, must be compensatory rather than punitive in nature." Lest
its meaning be misunderstood, the Court goes on: "In other words, the fee
award may go no further than to redress the wronged party 'for losses
sustained;' it may not impose an additional amount as punishment for
the sanctioned party's misbehavior." *Id.*

### b. People Who Live in Glass Houses Should Not Throw Stones.

Meanwhile counsel for Mr. Evers seems to have "fabricated" the
contention that the district court found Feehan's counsel "fabricated a
quote to support their position." Dkt. 98 at 20. The district court

---

extraordinarily compacted briefing schedule and multiple exchanges of drafts.
It appeared in Feehan's 31-page consolidated response brief filed December 8,
2020, Dkt. No. 72. It was written and filed in less than 24 hours in response
to hundreds of pages of oppositions to Feehan's motion for evidentiary hearing,
motions to dismiss, and supporting briefing and affidavits filed by multiple
defendants and *amici* on December 7, 2020. Dkt. Nos. 46, 47, 51, 52, 53, 54, 55,
56, 57, 58, 59, 60. It was simply a mistake. Nothing in Mr. Evers allegation
rises to the level of "defiling the very temple of justice" as would be required to
invoke inherent authority. There is no bad faith, no disregard of court orders
or rules, and no basis for any kind of sanctions.

addressed that wrongful allegation, writing: "This court did not hold that the plaintiff had fabricated a quote—it stated, based on its review of the case the plaintiff had cited, that he *appeared* to have done so." *Feehan* at Dkt. 133 at 26-27; App. at 26-27.

It should go without saying, but we all make mistakes in filings— no matter how capable, experienced, or careful we are.[33]   Not only did counsel for Mr. Evers claim the quote was "fabricated," when there is no evidence of that and no hearing of any kind was held, even worse, they also assert that *John* Eastman was responsible for this litigation. *Feehan* (CTA 7) at Dkt. 14 at 4.  Dr. John Eastman is a professor of constitutional law in California who has been repeatedly maligned, smeared, investigated, and even referred by Congress for prosecution after he worked on behalf of President Trump and raised novel issues.[34]   John Eastman had no role in this litigation.

---

[33] Even federal judges make mistakes. *See Feehan*, Dkt. 113 at fn. 1; App. at 4, fn. 1 (mistakenly referring to Van Orden as a defendant, when he was listed as a plaintiff in the original complaint, *Id.* at Dkt. 1.)

[34] *See e.g.*, Christina Wilkie, *Trump Lawyer John Eastman referred for prosecution by Jan. 6 committee*, CNBC (Dec. 19, 2022, 3:01 PM), available at https://tinyurl.com/yc68dy6k.

It is easy to imagine how a misquote or incorrect citation could occur in the rush of the editing process of a brief responding to hundreds of pages of opposing briefing by multiple persons in the twenty-four hours allotted for the reply.   It is far more difficult to imagine how Appellant's counsel—with a month or more to prepare one brief—could attribute the case and filings below to *John* Eastman—an attorney who was never involved.  Evers' counsel cite the docket sheet, but apparently they did not read it.  *Daniel* J. Eastman of Mequon, Wisconsin, is the first counsel listed on the first page.  *Feehan* (CTA 7) at Dkt. 14 at 4; *see also Feehan* Docket Sheet at 1.

Should we allege this is a deliberate effort to prejudice the court against counsel?   Should we request a sanctions hearing on the "fabrication" allegation and the Eastman assertion and seek sanctions against Evers and his counsel for having to defend this appeal?  Are we going to litigate controversial cases now by sanctions motions rather than on their merits?

Moreover, no hearing is needed to resolve the erroneous quote. Counsel with unblemished records should be given the benefit of the doubt.  This Court has afforded that grace—on far more egregious facts.

It has been reluctant to deem a misquote deliberate except in the most flagrant circumstances.  *See Quality Molding Co. v. American Nat. Fire Ins. Co.*, 287 F.2d 313 (1961); *see also Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163 (1968).  Each of these cases demonstrate far more damning conduct than the inadvertent quote and cite in this case.

If any sanctions were to be imposed here, they should be imposed against counsel for Evers.[35]  They brought this appeal in direct contravention of longstanding precedent, on an ultimate issue reviewed under the district court's rarely-reversed "abuse of discretion" standard, and one could argue they deliberately sought to prejudice the court against counsel for Mr. Feehan by claiming *John* Eastman was counsel in this case.  Yet, the integrity of our justice system also depends on the right of direct appeal—which is probably at least part of  the reason this Court ordered full briefing in this case.  *See Feehan* (CTA 7) at Dkt. 8.

### c. *King v. Whitmer* is Distinguishable.

---

[35] Apparently, rather than do their own research, counsel for Evers did a "cut and paste" job from The 65 Project's tendentious, made-for-media hit piece against *John* Eastman released July 28, 2022. *See* The 65 Project, "Ethics Complaint Against John Eastman," (July 28, 2022) available at https://tinyurl.com/yzfwwwy4.

Appellant's reliance on the district court's decision in *King v. Whitmer* is misplaced. 556 F.Supp.3d 680 (E.D. Mich. 2021). First, it is distinguishable on its facts. There was a Rule 11 motion in *King*; arguably, safe harbor notice was given; and, the motion for sanctions was filed before the case was dismissed. Second, Judge Pepper was aware of that ruling when she issued her decision, and she still wrote that she would not grant sanctions. Third, not only is the district court opinion in *King* not final, but it should be reversed. The Michigan judge held no evidentiary hearing, allowed no discovery, and did not even give counsel an opportunity to present evidence to defend against sanctions. Its assertions that the lawyers' claims were frivolous, and its numerous gratuitous negative characterizations of the affidavits—while refusing to allow affiants to testify—reflected nothing more than its own biased view of the matter and denial of any reasoned application of the law or due process. The case is pending decision by the Sixth Circuit.[36] It should be reversed as it worked a sea-change in the law governing sanctions,

---

[36] Oral argument in *King v. Whitmer*, Case Nos. 21-1785, 22-1786, 22-1787, and 22-1010, (6th Cir, Dec. 8, 2022) may be heard at https://tinyurl.com/ya9hfy7m.

35

violating Due Process and the First Amendment right to petition the government.

The only other court to sanction one of the attorneys in this case for involvement in litigation challenging the 2020 Presidential Election—a state trial court's revocation of Lin Wood's *pro hac vice* status—was resoundingly reversed by the Delaware Supreme Court. *Page v. Oath Inc.*, No. 69,2021, 2022 WL 162965 (Del. Jan. 19, 2022). The right of attorneys to file a complaint seeking redress of grievances on behalf of public official clients without fear of judicial reprisal applies no matter the ultimate truth or falsity, or success or failure on the merits, of a client's or witnesses' statements, so long as *the attorneys* do not suborn the statements.[37]

### d. Other Cases and Policy Demand Rejection of Sanctions.

When the shoe was on the other foot, Democrats vehemently opposed the imposition of sanctions against their lawyers who made the

---

[37] The Delaware Supreme Court made exactly this point when reversing the vacatur of Wood's pro hac vice admission. *Page*, 2022 WL 162965, at *3 ("To the contrary, our own ethical rules, by prohibiting a lawyer from asserting claims 'unless there is a basis in law for doing so that is not frivolous,' implicitly recognize that a claim ultimately found to lack a basis in law and fact can nonetheless be non-frivolous.") (quoting Del. R. Prof. C. 3.1)).

same allegations they now call preposterous and "frivolous." The Republicans in Ohio in 2004 sought sanctions against the Democrat contestors to the presidential election. They claimed the Democrats' complaint was "theory, conjecture, hypothesis, and invective" rather than evidence-based; that the contestors filed suit "only for partisan political purpose" and for the purpose of "generating headlines and harassing the rightful winners of the election" rather than for legitimate purposes." After losing their claims of computerized election fraud, vote flipping, outcome changing third-party re-tabulation, and multiple other irregularities in Ohio 2004. Democrats vigorously opposed sanctioning their lawyers. This effort to defend the lawyers was led by Democrat leadership in Congress. *Moss* Amicus Brief at 2, *available at* https://tinyurl.com/mwkde7uj. They were right. Sanctions do not arise from these circumstances.

It is axiomatic that the dismissal of a case does not equate to it being frivolous. As the Supreme Court wrote: "It is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.

This kind of hindsight logic would discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978).

Presumptively reasonable jurists, including at least one United States Supreme Court Justice[38], three Michigan Supreme Court Justices[39], federal district judges[40], and law professors[41], have expressed

---

[38] Justice Thomas expressed concern on claims substantially similar to those brought by Appellees. *See Republican Party of Penn. v. Degraffenreid*, 141 S. Ct. 732 (2021) (Thomas, J., dissenting from the denial of certiorari)

[39] Regarding Michigan, Justice Zahara's concurrence in *Costantino v. Detroit*, 950 N.W.2d 707, 707 (Mich. 2020) writes in part:
> Nothing said is to diminish the troubling and serious allegations of fraud and irregularities asserted by the affiants offered by plaintiffs, among whom is Ruth Johnson, Michigan's immediate past Secretary of State, who testified that, given the "very concerning" "allegations and issues raised by Plaintiffs," she "believe[s] that it would be proper for an independent audit to be conducted as soon as possible to ensure the accuracy and integrity of th[e] election."

*Id.* at 708 (Zahra, J., joined by Markman, C.J., concurring*). See also Id*. at 710 (Viviano, J. dissenting.)

[40] District Judge Totenberg noted Georgia's elections systems suffer from many of the same vulnerabilities advanced by Appellees and thought those vulnerabilities sufficiently serious to justify granting a preliminary injunction. *See Curling v. Raffensperger*, 397 F. Supp. 3d 1334, 1347 (N.D. Ga. 2019).

[41] These concerns are shared by the dean of Yale Law School. *See* Adam Liptak, *Error and Fraud at Issue as Absentee Voting Rises*, N.Y. TIMES (Oct 6, 2012) ("'You could steal some absentee ballots or stuff a ballot box or bribe an election administrator or fiddle with an electronic voting machine,' [Heather Gerken] said. That explains, she said, 'why all the evidence of stolen elections involves absentee ballots and the like.'").

concerns like those raised in Feehan's complaint.  *See also Pearson v. Kemp*, No. 1:20-cv-4809 (N.D. Ga. Nov. 29, 2020) (granting TRO as to claims regarding Dominion voting machines).   More recently, the Wisconsin Supreme Court disallowed the use of willy-nilly absentee ballot boxes—a claim it had refused to vindicate in response to an election challenge.  *Teigen v. Wisconsin Elections Comm'n*, 976 N.W.2d 519 (Wisc. 2022).[42]  The law on these crucial issues is still being developed.  The

---

[42]  Long ago, this Court recognized the problem with unlimited absentee voting—such as pervaded the last election and was funded largely by Mark Zuckerberg.

> So at bottom the plaintiffs are arguing that the Constitution requires all states to allow unlimited absentee voting, and the argument ignores a host of serious objections to judicially legislating so radical a reform in the name of the Constitution. Voting fraud is a serious problem in U.S. *1131 elections generally and one with a particularly gamey history in Illinois (as we noted in *Nader v. Keith, supra*), and it is facilitated by absentee voting. John C. Fortier & Norman J. Ornstein, "Symposium: The Absentee Ballot and the Secret Ballot: Challenges for Election Reform," 36 *U. Mich. J.L. & Reform* 483 (2003); William T. McCauley, "Florida Absentee Voter Fraud: Fashioning an Appropriate Judicial Remedy," 54 *U. Miami L.Rev.* 625, 631–32 (2000); Michael Moss, "Absentee Votes Worry Officials as Nov. 2 Nears," *New York Times* (late ed.), Sept. 13, 2004, p. A1. In this respect absentee voting is to voting in person as a take-home exam is to a proctored one.

*Griffin v. Roupas*, 385 F.3d 1128, 1130–31 (7th Cir. 2004),

Wisconsin legislature has continued to investigate and found even more evidence of election fraud. *See*, Wisconsin Office of Special Counsel, *Office of Special Counsel Second Interim Investigative Report on the Apparatus & Procedures of the Wisconsin Elections System*, March 1, 2022, available at https://tinyurl.com/mmm. The evidence remains to be heard in a court of law.

## CONCLUSION

The district court properly applied the law of this Circuit. Even if this Court were inclined to revisit *Overnite*, it should not do so in this case where the district court expressly said it would not award Section 1927 sanctions, and there is no basis for more circumscribed inherent authority sanctions. Remand for further proceedings would only prolong the tail wagging the dog of the original case that was completed in the district court in eight days—now more than two years ago. Far more reasons justify the denial of sanctions here.

For these reasons, the decision of the district court denying sanctions should be affirmed. In addition, for two years, in the face of *Overnite's* obvious, controlling precedent, Gov. Evers has pursued his hypocritical, retaliatory sanctions motion presumably at taxpayer

expense.  It has been used publicly to malign and bludgeon honorable

counsel while consuming their time and resources.  As this Court did in

*Overnite*, we request it hold no sanctions could be imposed in this case.

All costs of this appeal should be awarded to Appellees along with any

other relief to which they may show themselves to be entitled.

Respectfully submitted this 27th day of January 2023.

/s/ Sidney Powell_____
Sidney Powell
Sidney Powell P.C.
2911 Turtle Creek Blvd, Ste 300
Dallas, TX 75219
Ph: 214-707-1775
Email: sidney@federalappeals.com
*Counsel for Appellee Feehan and counsel*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32, I certify that the attached opening brief of Appellee is proportionately spaced in Century Schoolbook typeface of 14 point for text and 13 point for footnotes. Including headings and footnotes, the brief contains 8,958 words.

DATED this 27th day of January 2023.

/s/ Sidney Powell
Sidney Powell
Sidney Powell P.C.
2911 Turtle Creek Blvd, Ste 300
Dallas, TX 75219
Ph: 214-707-1775
Email: sidney@federalappeals.com
*Counsel for Appellees*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is a member of the bar of this Court in good standing, and that the foregoing Opening Brief of Appellee was delivered via electronic service on this date to:

Jonathan L. Williams
Marina Eisner
States United Democracy Center
1101 17th Street, NW, Suite 250
Washington, DC 20036
(202) 999-9305

Jeffrey A. Mandell
Rachel E. Snyder
Richard A. Manthe
Stafford Rosenbaum LLP
222 W. Washington Ave., Suite 900
Madison, WI 53701
(608) 256-0226

January 27, 2023

/s/ Sidney Powell_____
Sidney Powell,
Sidney Powell P.C.
2911 Turtle Creek Blvd, Ste 300
Dallas, TX 75219
Ph: 214-707-1775
Email: sidney@federalappeals.com
*Counsel for Appellees*