No. 22-2704

# In the United States Court of Appeals for the Seventh Circuit

———————————————————————

WILLIAM FEEHAN,

Plaintiff-Appellee,

v.

TONY EVERS,
in his official capacity as Wisconsin's Governor,

Defendant-Appellant.

———————————————————————

**REPLY BRIEF OF
DEFENDANT-APPELLANT GOVERNOR TONY EVERS**

———————————————————————

Appeal from the United States District Court
for the Eastern District of Wisconsin
Case No. 2:20-cv-01771
The Honorable Chief Judge Pamela Pepper

———————————————————————

Jonathan L. Williams
Marina Eisner
States United Democracy Center
1101 17th Street, NW, Suite 250
Washington, DC 20036
(202) 999-9305

Jeffrey A. Mandell
Rachel E. Snyder
Richard A. Manthe
Stafford Rosenbaum LLP
222 W. Washington Ave., Suite 900
Madison, WI 53701
(608) 256-0226

*Attorneys for Governor Tony Evers*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

ARGUMENT...................................................................................... 1

I.    The district court had jurisdiction to award sanctions. .................................... 1

II.   The Court should remand for the district court to consider § 1927
      and inherent authority sanctions under the correct legal standard. .................. 6

III.  Litigation is not politics by other means. .......................................................11

CONCLUSION .................................................................................12

CERTIFICATE OF COMPLIANCE....................................................14

## TABLE OF AUTHORITIES

### **Cases**

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ................................................................ 6, 9

*Cheek v. Doe*,
  828 F.2d 395 (7th Cir. 1987) ........................................... 10

*Chen v. Holder*,
  607 F.3d 511 (7th Cir. 2010) ........................................... 11

*Coleman v. Comm'r*,
  791 F.2d 68 (7th Cir. 1986) ............................................. 10

*Cooter & Gell v. Hartmarx Corp.*,
  496 US. 384 (1990) .......................................................... 2, 3

*Corley v. Rosewood Care Ctr., Inc. of Peoria*,
  388 F.3d 990 (7th Cir. 2004) ............................................. 8

*Fulani v. Hogsett*,
  917 F.2d 1028 (7th Cir. 1990) ........................................... 8

*Goodyear Tire & Rubber Co. v. Haeger*,
  581 U.S. 101 (2017) ............................................................ 5

*Hicks v. S. Md. Health Sys. Agency*,
  805 F.2d 1165 (4th Cir. 1986) .......................................... 3, 4

*Hyde v. Irish*,
  962 F.3d 1306 (11th Cir. 2020) .......................................... 2

*In re Ruben*,
  825 F.2d 977 (6th Cir. 1987) ......................................... 3, 4, 5

*In re Schaefer Salt Recovery, Inc.*,
  542 F.3d 90 (3d Cir. 2008).................................................. 5

*In re TCI Ltd.*,
  769 F.2d 441 (7th Cir. 1985) ........................................... 10

*Kiefel v. Las Vegas Hacienda, Inc.*,
    404 F.2d 1163 (7th Cir. 1968) ................................................................. 7

*Kotsilieris v. Chalmers*,
    966 F.2d 1181 (7th Cir. 1992) ................................................................. 8

*Lightspeed Media Corp. v. Smith*,
    761 F.3d 699 (7th Cir. 2014) ................................................................. 6

*Mary Ann Pensiero, Inc. v. Lingle*,
    847 F.2d 90 (3d Cir. 1988) ................................................................. 5

*Matos v. Richard A. Nellis, Inc.*,
    101 F.3d 1193 (7th Cir. 1996) ................................................................. 3

*Moss v. Bush*,
    828 N.E.2d 994 (Ohio 2005) ................................................................. 10

*Overnite Trans. Co. v. Chicago Indus. Tire Co.*,
    697 F.2d 789 (7th Cir. 1983) ................................................................. 3, 4, 5

*Owen Equip. & Erection Co. v. Kroger*,
    437 U.S. 365 (1978) ................................................................. 2

*Peacock v. Thomas*,
    516 U.S. 349 (1996) ................................................................. 6

*Ratliff v. Stewart*,
    508 F.3d 225 (5th Cir. 2007) ................................................................. 3

*Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*,
    465 F.3d 642 (6th Cir. 2006) ................................................................. 2

*Samuels v. Wilder*,
    906 F.2d 272 (7th Cir. 1990) ................................................................. 8

*Schlaifer Nance & Co., Inc. v. Est. of Warhol*,
    194 F.3d 323 (2d Cir. 1999) ................................................................. 3, 5

*Steinert v. Winn Grp., Inc.*,
    440 F.3d 1214 (10th Cir. 2006) ................................................................. 11

*Teamsters Local No. 579 v. B & M Transit, Inc.*,
    882 F.2d 274 (7th Cir. 1989) ................................................................. 7

iii

*Trump v. Wis. Elections Comm'n*,
  983 F.3d 919 (7th Cir. 2020) ............................................................... 8

*White v. N.H. Dep't of Emp. Sec.*,
  455 U.S. 445 (1982) ............................................................................. 4

*Willy v. Coastal Corp.*,
  503 U.S. 131 (1992) ......................................................................... 2, 3

## Statutes and Constitutional Provisions

28 U.S.C. § 1927 ................................................................................ *passim*

**ARGUMENT**

The issues in this appeal are narrow: (1) did the district court err by concluding that it lacked jurisdiction to consider Governor Evers's sanctions motion, and (2) did the district court abuse its discretion when it addressed the merits of the motion? Appellee William Feehan cannot overcome the wall of Supreme Court and appellate court precedent rejecting his position on jurisdiction. And he all but ignores Governor Evers's explanation that the district court abused its discretion by concluding that a dismissal on procedural grounds meant it could not impose sanctions for filing baseless claims. These errors require remand for the district court to consider, under the correct legal standard, whether to impose sanctions.

While this appeal is no occasion for the Court to determine whether the district court should sanction Feehan and counsel, many of Feehan's arguments insisting sanctions would be inappropriate here only underscore the importance of ensuring that sanctions are available to address bad-faith post-election litigation. Feehan's vision of post-election litigation—in which one political side's alleged transgressions are said to justify the other's—promises disastrous consequences for the judiciary and for our Nation. Regardless of party affiliation, litigants and counsel who challenge elections in bad faith must not be allowed to walk away from the consequences of their actions.

## I.      The district court had jurisdiction to award sanctions.

Feehan's arguments that the district court lacked jurisdiction to award sanctions absent a "live case or controversy" lack merit. *See* Feehan Br. 11-19.

Feehan cannot overcome the Supreme Court's repeated recognition that district courts have jurisdiction to award attorney's fees regardless of the existence of an ongoing case or controversy—even years after a case is over. Evers Br. 13-14. Feehan distinguishes (at 14, 17-18) *Cooter & Gell v. Hartmarx Corp.*, 496 US. 384 (1990) and *Willy v. Coastal Corp.*, 503 U.S. 131 (1992) as involving Rule 11 sanctions, but that distinction is not relevant to jurisdiction. Like other rules of civil procedure, Rule 11 cannot "create or withdraw federal jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 370 (1978).[1] Indeed, *Cooter* grounded its jurisdictional holding not in Rule 11's particulars, but in the "well established" rule that courts have jurisdiction to consider "collateral issues," such as attorney's fees, long after judgment. 496 U.S. at 395.

In any event, there is "no material difference between the collateral character of sanctions under Rule 11 and sanctions awarded under 28 U.S.C. § 1927 or pursuant to a court's inherent authority." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 645 (6th Cir. 2006). Thus, contrary to Feehan's claim (at 18), other federal appellate courts *have* relied on *Cooter* and *Willy* to hold that district courts possess jurisdiction to award sanctions under 28 U.S.C. § 1927 and the court's inherent authority regardless of any Article III case or controversy. *See Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020) (§ 1927 and inherent authority);

---

[1] For this reason, Feehan is mistaken when he derides Governor Evers's reference to the advisory committee's conclusion that a district court can award attorney's fees post-appeal as a "pure waste of time." *See* Feehan Br. 19 n.19. That conclusion further supports that jurisdiction to award fees continues post-appeal.

*Ratliff v. Stewart*, 508 F.3d 225, 231-32 (5th Cir. 2007) (§ 1927 sanctions); *Schlaifer Nance & Co., Inc. v. Est. of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999) (§1927 and inherent authority); *see also In re Ruben*, 825 F.2d 977, 982 (6th Cir. 1987) (holding pre-*Cooter* that a district court has jurisdiction to impose sanctions under § 1927 and inherent authority after the end of an appeal); *Hicks v. S. Md. Health Sys. Agency*, 805 F.2d 1165, 1166-67 (4th Cir. 1986) (same as to § 1927). Indeed, this Court recognized *Cooter* and *Willy*'s relevance to § 1927 sanctions in *Matos v. Richard A. Nellis, Inc.*, explaining that § 1927 sanctions may be imposed "even if the court lacked subject-matter jurisdiction." 101 F.3d 1193, 1196 (7th Cir. 1996); *see* Evers Br. 22-23. Feehan's attempt to distinguish *Matos* (at 17) simply ignores this aspect of the case.

Against all this, Feehan is left only with his reading of *Overnite Transportation Co. v. Chicago Industrial Tire Co.*, 697 F.2d 789 (7th Cir. 1983).[2] But his reading of the decision as imposing an inflexible prohibition on seeking sanctions post-mandate fails to account for two key aspects: (1) the repeated references to the movant's inexplicable eight-month delay while the case was on appeal and (2) *Overnite*'s own description of its holding as requiring only that § 1927 motions be filed within a reasonable time, regardless of any appeal. Evers Br. 17-18.[3] Feehan's

---

[2] Feehan calls *Overnite* "controlling" (at 16), but the panel is free to overturn it if it concludes that the case was wrongly decided. Evers Br. 21-23.

[3] Because *Overnite* is distinguishable, Feehan's framing (at 13) of the question as to whether *Overnite* remains "good law" is mistaken. In any event, the cases that Feehan cites do not embrace *Overnite's* jurisdictional assertions. *See* Evers. Br. 18 n.6.

reading of *Overnite* as requiring an ongoing case or controversy for sanctions to be imposed also conflicts with *Matos*'s holding that a § 1927 motion does not become moot when a case ends. It also conflicts with every circuit to consider the issue, as well as multiple Supreme Court cases. *See* Evers Br. 13-16, 21-23. To avoid this split and to be consistent with Supreme Court precedent, *Overnite* must be understood to hold only that a § 1927 motion filed after an unexplained delay of more than eight months while a case is on appeal is untimely.

Feehan's attempt to diminish the circuit split that would result from his reading of *Overnite* falls short. He first argues that *Hicks* and *Ruben* are inapplicable because they "expressly distinguish" *Overnite*. Feehan Br. 16 n.16. As to *Hicks*, Feehan is mistaken. In that case, as here, a party moved for § 1927 sanctions after the conclusion of the appeal. 805 F.2d at 1165-66. Relying on *Overnite*, the sanctioned party argued that "termination of appellate proceedings in [the appellate] court divested the district court of jurisdiction to consider any subsequently filed motion for the allowance of fees." *Id.* at 1166. Relying on Supreme Court precedent that *Overnite* did not address, the Fourth Circuit rejected *Overnite*'s jurisdictional analysis, concluding that sanctions motions could be filed even "months after the conclusion of all appellate proceedings." *Id.* at 1167 (citing *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445 (1982)).

*Ruben* did distinguish *Overnite*, but that only shows that *Overnite* does not govern here. As Governor Evers has already explained, the short duration of the first appeal and the absence of any duplication of effort (because the case was

4

dismissed before briefing) that distinguished *Ruben* from *Overnite* also distinguish this case from *Overnite*. Evers Br. 20. As the Sixth Circuit did in *Ruben*, the Court should conclude that *Overnite* does not apply when the previous appeal terminates before briefing.

Feehan's other distinctions also make no difference. In *Schlaifer*, the court held that the district court had jurisdiction to impose sanctions, "irrespective of the status of the underlying case" and after the mandate had issued. 194 F.3d at 333. And Feehan's citation (at 16. n.16) to the Third Circuit's supervisory rule that Rule 11 sanctions be sought pre-judgment fares no better, because the Third Circuit has (1) held that jurisdiction to impose sanctions continues post-appeal, (2) questioned the supervisory rule's continuing viability, and (3) held that it does not apply to § 1927 sanctions. *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 102 (3d Cir. 2008) (questioning viability and exempting § 1927 sanctions); *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 98 (3d Cir. 1988) (addressing jurisdiction).

Finally, despite Supreme Court precedent to the contrary, Feehan claims that "in the absence of a specific textual authority granting jurisdiction to entertain a motion for sanctions filed after a case is over," a district court has no jurisdiction to impose sanctions. Feehan Br. 15. He contends that "[t]his is "particularly true of inherent-authority sanctions." *Id.* The rule is precisely the opposite. Courts' inherent powers (including the power to assess attorney's fees) are "not conferred by rule or statute." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017). While it is true that courts must be careful when exercising their inherent powers,

that is "[b]ecause of their very potency"—not because the exercise of those powers depends on an express textual grant of jurisdiction. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). As for § 1927, this Court has consistently approved imposing sanctions sought post-judgment, so long as the district court determines they are sought within a reasonable time. *E.g.*, *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 707-08 (7th Cir. 2014).

*Peacock v. Thomas*, 516 U.S. 349 (1996), is not to the contrary. There, the Supreme Court held that ancillary jurisdiction (now "supplemental jurisdiction," *id.* at 354 n.5) can justify Article III jurisdiction over non-federal claims only if they are asserted in the same action as a federal claim. *Id.* at 354-55. It does not create jurisdiction over non-federal claims filed in a later action, even if those claims are factually related. *Id. Peacock* has no bearing on a district court's jurisdiction to impose sanctions for earlier conduct in the same action. Indeed, jurisdiction to award sanctions does not depend on the existence of Article III jurisdiction at all. Evers Br. 14-15.

For all of these reasons, Feehan's argument that the district court lacked jurisdiction fails.

## II.    The Court should remand for the district court to consider § 1927 and inherent authority sanctions under the correct legal standard.

Feehan contends that even if the district court has jurisdiction to consider imposing sanctions, it should not be allowed even to hold a hearing to determine whether Feehan's misrepresentation of a case merits inherent authority sanctions. Depriving a district court of the opportunity even to consider imposing sanctions, as

6

Feehan urges, would be an extraordinary departure from this Court's precedent.

Not only should the district court be allowed to consider this form of sanctions, but

it should also consider whether Feehan and his counsel's decision to file and

prosecute this case at all merits sanctions.

**1.** There should be little question that the district court could impose sanctions

if it determines that Feehan's counsel intentionally fabricated a quote that

misrepresented applicable law. A "deliberate misquotation" is not to be sloughed off;

it "calls for a strong condemnation." *Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d

1163, 1167 (7th Cir. 1968). It is thus "obvious" that "deliberate mischaracterization

of precedent" may warrant sanctions. *See Teamsters Local No. 579 v. B & M*

*Transit, Inc.*, 882 F.2d 274, 280 (7th Cir. 1989).

Feehan attempts to downplay his conduct but ignores that, as the district court

explained, even without quotation marks, the statement completely

mischaracterized the cited case. (*See* App. 26.)[4] Feehan quoted the case as stating

"even though the ***election*** has passed, the meeting of electors obviously has not, so

plaintiff's claim here is hardly moot." (App. 26.) But as the district court observed,

the cited case was not about unwinding a presidential election. (*See* App. 26-27

(quoting the district court's order of dismissal).) Instead, the case determined that a

challenge to a law regulating referenda was not moot because the plaintiff intended

---

[4] Feehan notes (at 32-34) that page 4 of Governor Evers's brief misstated the
first name of attorney Daniel Eastman as "John." Governor Evers's counsel regret
the error, which was inadvertent and did not come to their attention until the filing
of Feehan's brief.

to violate the law again. (App. 26-27.) The misstatement was still more problematic because it suggested that the Seventh Circuit welcomes after-the-fact challenges to elections; the longstanding rule is that "any claim against a state electoral procedure must be expressed expeditiously." *Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990).[5]

The district court should have an opportunity to determine whether to impose sanctions for this transgression. Whether to impose sanctions lies "solely within the discretion of the district court." *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1183 (7th Cir. 1992). It is "a judgment call" "for the district court to make in the first instance." *Samuels v. Wilder*, 906 F.2d 272, 275-76 (7th Cir. 1990) (remanding for the district court to consider sanctions under § 1927). This makes good sense. District courts "are in the best position to determine whether a legal position is far enough off the mark to be frivolous or whether an attorney conducted an adequate inquiry under the particular circumstances of the case." *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1013 (7th Cir. 2004).

Although Feehan contends (at 30) that sanctions are inappropriate "on this record," the district court has not held a hearing. Feehan claims (at 30-31) that sanctions would be inappropriate for a "mistake," but the facts surrounding Feehan's misrepresentation of precedent on so central an issue are for the court to resolve. The district court has made clear that, despite the circumstances, it has not

---

[5] The Court reiterated this rule when rejecting a post-election lawsuit in 2020. *Trump v. Wis. Elections Comm'n*, 983 F.3d 919, 925-26 (7th Cir. 2020).

prejudged the issue and wishes to give Feehan's counsel an opportunity at the hearing "to explain whether the drafter of the pleading mistakenly cited the wrong case or whether there was some other innocent reason for the apparent[] 'fabrication.'" (App. 27.) If the district court determines that Feehan or counsel acted improperly, it should have the opportunity to "fashion an appropriate sanction" based on any misconduct it finds. *Chambers*, 501 U.S. at 44.[6]

**2.** Feehan's argument that the district court did not abuse its discretion by denying sanctions on other grounds fares no better. Nowhere does Feehan dispute that denying sanctions based on an erroneous legal standard is per se an abuse of discretion. *See* Evers Br. 11-12, 29. Nor does he dispute that the district court erred when it determined dismissing the case on procedural grounds precluded it from considering the merits of the case as a basis for sanctions. *See* Evers Br. 26-29.

Feehan argues at length that the district court did not abuse its discretion based on a variety of factors that the district court never addressed. *See* Feehan Br. 22-40. None of these arguments justifies depriving the district court of the opportunity to address sanctions under the correct legal standard on remand. The First Amendment right to petition is no bar if the district court determines that Feehan's claims were frivolous. *See* Feehan Br. 22-24. Even a pro se plaintiff has "no constitutional right to bring frivolous lawsuits." *Cheek v. Doe*, 828 F.2d 395, 397

---

[6] Obviously, Governor Evers does not contend that Feehan and counsel should reimburse "every dime of his attorneys' fees" based "only [on] the quotation error." *See* Feehan Br. 31. He never has, and Feehan cites nothing in support of this assertion.

(7th Cir. 1987) (quoting *Coleman v. Comm'r*, 791 F.2d 68, 72 (7th Cir. 1986)).

Similarly, the Ohio Supreme Court's decision not to impose sanctions in *Moss v. Bush*, 828 N.E.2d 994 (Ohio 2005), does not suggest that a federal court cannot impose sanctions for baseless post-election claims. *See* Feehan Br. 24-28. Unlike this case, *Moss* was a state-court election contest specifically authorized by Ohio law. 828 N.E.2d at 994. It does not speak to whether the relief Feehan sought was "incapable of being addressed by a federal court." *See* Feehan Br. 24. Nor does *Moss* categorically exempt post-election cases brought in federal court from sanctions. The court concluded it could not impose sanctions "based on the filing of an election contest claimed to have been filed without evidentiary support" because Ohio law forbade it. *Moss*, 828 N.E.2d at 998. Whether this decision by the legislature was the best one was "a matter of public policy not for this court." *Id. Moss* teaches nothing about how a federal court should handle frivolous post-election claims. In any event, Feehan's policy arguments about imposing sanctions in elections cases should be addressed to the district court's discretion in the first instance.

**3.** Feehan's claim (at 20) that § 1927 "does not apply to the filing of a lawsuit" is both wrong and irrelevant.

It is wrong because the Seventh Circuit has long rejected the view that a "litigant gets one free pleading" under § 1927. *In re TCI Ltd.*, 769 F.2d 441, 448 (7th Cir. 1985). Indeed, this Court has repeatedly approved taxing the entire costs of defense caused by baseless claims under the statute. *See* Evers Br. 24. Despite

10

Governor Evers's citation of these cases, Feehan's brief ignores this settled interpretation.

It is irrelevant for two reasons. First, Feehan immediately multiplied proceedings by inundating the district court with additional filings seeking relief based on the complaint, including a motion for a temporary restraining order filed the same day as the complaint and more filings accompanying the amended complaint, along with a request to expedite. *See* Evers Br. 6. Even under the narrower view, plaintiffs are protected only during periods when they do "nothing" to "preserve and advance [meritless] claims beyond the complaint." *Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1225-26 (10th Cir. 2006). Second, and just as significant, Feehan does not dispute that the district court's inherent authority would allow sanctions from the outset.

## III.    Litigation is not politics by other means.

The throughline of Feehan's brief is the disturbing notion that whatever misconduct might exist in this case is somehow excused by alleged transgressions by "Democrat litigants" in past cases—a "What's Sauce for the Goose is Sauce for the Gander" principle of sanctions in cases seeking to toss out election results. *See, e.g.*, Feehan Br. 24. As this Court has well explained, litigation is not "just politics by other means," nor are the courts a "pulpit for political protest." *Chen v. Holder*, 607 F.3d 511, 513 (7th Cir. 2010). Post-election litigation must not be an anything-goes, partisan tit-for-tat in which courts, taxpayers, and public officials who administer elections bear the cost of frivolous claims.

As Feehan acknowledges (at 28), the "enormous consequences" of elections can lead to "election-related violence." And as recent history shows, claims of "stolen elections" can lead to lawbreaking and loss of life. But bad-faith post-election litigation need not spawn political violence to be dangerous. Indeed, cases like this one fray the very fabric of our society—promoting distrust and cynicism that erodes faith in our democracy and impeding the work of our government while judges and officials alike slog through frivolous cases. To be sure, our democratic institutions withstood the unprecedented assault that followed the 2020 election. But without accountability, dissatisfied partisans will have little reason not to file baseless claims to change the results of an election. The district court should have the opportunity, consistent with due process and the appropriate procedural safeguards, to determine whether Feehan's claims were brought in good faith and based on reasonable factual and legal inquiry. If they were not, Wisconsin's taxpayers should be reimbursed the costs incurred to defend the results of the 2020 election.

## CONCLUSION

For the reasons set forth in this reply brief and in Governor Evers's opening brief, the Court should vacate the order denying Governor Evers's sanctions motion and remand for the district court to consider sanctions under the correct legal standard.

12

Dated: February 17, 2023             Respectfully Submitted,

                                                /s/ Jeffrey A. Mandell

Jonathan L. Williams                     Jeffrey A. Mandell
Marina Eisner                             Rachel E. Snyder
States United Democracy Center      Richard A. Manthe
1101 17th Street, NW, Suite 250      Stafford Rosenbaum LLP
Washington, DC 20036               222 W. Washington Ave., Suite 900
(202) 999-9305                       Madison, WI 53701
jonathan@statesuniteddemocracy.org  (608) 256-0226
marina@statesuniteddemocracy.org    jmandell@staffordlaw.com
                                       rsnyder@staffordlaw.com
                                       rmanthe@staffordlaw.com

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Mac version 16.67 in 12-point Century Schoolbook font.

/s/ Jeffrey A. Mandell
Jeffrey A. Mandell

14